IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

UBALDO CASTANEDA,          )
           Plaintiff,         )
                      )
vs.                    )       CASE NO. 1:10-cv-0861-JMS-DML
                      )
TD STOUT PRESERVATION, INC.   )
and TERRY D. STOUT,        )
           Defendants.      )

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

On January 18, 2012, the Court conducted a bench trial in this action. Plaintiff Ubaldo Castaneda was present in person and by counsel Stephen E. Schrumpf. Defendant T. D. Stout Preservation, Inc., ("the Company") was present by counsel Michael Hebenstreit. Defendant Terry D. Stout was present by counsel Bruce Brattain but did not personally appear or testify.

Plaintiff Castaneda brought his action under the Fair Labor Standards Act ("FLSA") and Indiana Minimum Wage Law ("IMWL") to recover unpaid overtime compensation and liquidated damages. The action is against the Company Defendant, TD Stout Preservation, Inc., and Terry D. Stout, individually, as a corporate officer. The Court now enters its findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a)(1). Any finding of fact that is more properly considered a conclusion of law is adopted as such. Similarly, any conclusion of law that is more properly considered a finding of fact is adopted as such. Finally, the Court recognizes that there was conflicting testimony on several issues presented at trial. The Court considered all of the evidence presented by the parties in arriving at its findings of fact.

**<u>Findings of Fact</u>**

The parties stipulated to the following facts:

The Company is an Indiana corporation. The records of the Indiana Secretary of State show the office of the Company to be located at 217 Belmont Ave., Suite D, Indianapolis, Indiana 46222. The Company is in the business of providing preservation and care-taking services for property owners, banks and realtors concerning commercial and residential real estate in central Indiana. Mr. Castaneda worked for the Company as a non-exempt laborer from May 12, 2006 to June 5, 2010. In 2007, Mr. Castaneda worked 798 hours of overtime. In 2008, Mr. Castaneda worked 1,536 hours of overtime. In 2009, Mr. Castaneda worked 342 hours of overtime.

The Court accepts the foregoing stipulations as its findings of fact, and enters the following additional findings:

In 2010, the Company paid Mr. Castaneda a daily wage rate of $135 per day and did not record the hours he worked. Mr. Stout was the sole owner of the Company prior to the sale of the Company to Nicholas Byrd in 2007. Mr. Stout and Mr. Byrd entered into a contract for the sale of the Company which is Exhibit 3, and is styled, "Contract for the Sale of Stock" (hereafter referred to as the "Agreement"). The Agreement provided for Stout to sell 85% of his interest in the Company to Mr. Byrd, while retaining a 15% interest, along with a percentage of future sales. Mr. Stout remained a corporate officer after the sale. Mr. Byrd is not a party.

The Company was an "enterprise" engaged in "commerce" under the FLSA. The enterprise facet of the requirement is satisfied by Stipulations of Fact, Nos. 1 & 3. Exhibit 6 shows the sales of the Company to have been in excess of $500,000 at all relevant times. The

Company did interstate business in Ohio, Kentucky and Illinois. As such, the Company was engaged in commerce for purposes of FLSA.

The Company has a policy as to the payment of overtime that is contained in its Employee Handbook. The Policy is No. 303 (Exhibit 1). The Policy's language under the heading "Scope," states, "This policy applies to all non-exempt employees." Mr. Castaneda was a non-exempt employee. (Stipulation of Fact, No. 4.) This Policy also states as to overtime, "Non-exempt employees will be paid at the rate of 1½ times their regular rate of pay." (Stipulation of Fact, No. 4.)

Mr. Castaneda's payroll records establish that his regular rate of pay from 2007-2009 was $13.00-$13.50 per hour. (Exhibit 4(B)-(D).) Additionally, these records show no overtime recorded or paid. The forms used by the Company have a section specifically designated for calculating overtime. The payroll records establish that Mr. Castaneda was paid straight time for all hours worked. Mr. Castaneda testified that he was never paid overtime.

As established by Mr. Castaneda's payroll records, his regular rate of pay was $13.50 for 2009, and $13.00 for 2007-2008. Mr. Castaneda's uncompensated overtime in 2009 was $2,308.50; $9,984 in 2008; and $5,187 in 2007. (These amounts are derived by taking the stipulated amount of overtime for each year and multiplying that number by 50% of Mr. Castaneda's rate of pay.) This totals $17,479.50 in unpaid overtime.

In addition, Mr. Castaneda worked 20 weeks in 2010. However, that year, Mr. Castaneda was paid a daily rate of $135, regardless of the number of hours actually worked. The Defendants did not keep records of hours worked in 2010, as required by the FLSA.

A reasonable calculation of the value of overtime worked by Mr. Castaneda in 2010 can

be estimated by using known factors. Taking the number of weeks worked in prior years (88 weeks), and dividing that number into the total overtime pay owed for 2007, 2008, and 2009 ($17,479.50), an average weekly overtime amount can be determined. That amount is $198.62. Multiplying the number of weeks worked in 2010 (22 weeks), by $198.62 (the weekly average), yields the sum of $4,369.64. The total unpaid overtime owed to Mr. Castaneda is $21,849.14 ($17,479.50 + $4,369.64).

Even after the sale of the Company, Mr. Stout was present at the home office during the remainder of Mr. Castaneda's employment. He also directed Mr. Castaneda's work and signed his checks. Mr. Stout was in operational control for all of the years Mr. Castaneda was employed, being in charge of operations, and assigning job tasks and other functions to the workforce including Mr. Castaneda.

## Credibility Determination

The Court recognizes that some of the foregoing findings are based on controverted evidence. The Court has accepted Mr. Castaneda's testimony as more credible than the evidence offered by the Defendants. Mr. Stout was not present at trial and offered no personal testimony on the issue of his continued control of the Company following the sale. The Court presumes that if he had relevant evidence to offer, he would have.

Both Defendants relied upon the testimony of Mr. Byrd. Mr. Byrd's testimony was sometimes contradicted by the Company's own internal documents. At other times, Mr. Byrd claimed he once had documentation to corroborate his testimony, but the alleged documents were neither produced in discovery nor admitted into evidence at trial. Mr. Byrd also created summary or sample documents for trial, but they too were contradicted by the contemporaneous

company records.

First, Mr. Byrd testified that while the Agreement (Exhibit 3) was dated July 2, 2007, Mr. Stout physically transferred stock shares in the Company to him in January 2007, and that is when the sale and closing took place. But Mr. Byrd offered no credible explanation of the date discrepancy, other than to say that it was July before they got around to signing the Agreement. Defendants relied on Mr. Byrd to establish that Stout had no operational control over the Company after the alleged January sale and that Stout moved to Florida and was not regularly present at the Indianapolis office after the sale. Given the stated discrepancy, the lack of direct testimony from Mr. Stout, as well as the credible demeanor of Mr. Castaneda as a witness, the Court accepts Mr. Castaneda's evidence on the issue of Mr. Stout's presence and involvement with the Company after the 2007 sale.

Second, in direct contradiction of the Company's Employee Handbook, Mr. Byrd testified that there were actually two policies as to overtime. First, he claimed, there was Policy 303, which applied only to non-exempt office staff. An alleged second policy as to overtime existed for employees such as Mr. Castaneda who worked in the field. Mr. Byrd stated that the second policy looked at what the average employee in the field was earning and attempted to spread it out over time so that in a lack of work situation, the field employees would always be able to receive a check. Overtime was part of this calculation, according to Mr. Byrd.

Not only is this alleged second policy not in the handbook, no written corroboration of it was ever been produced in discovery despite an explicit request that any such document be produced. When asked where this policy physically existed and why it had not been produced, Byrd testified that he thought it was in a file cabinet somewhere and had been misplaced. Mr.

Castaneda testified that he was never informed of this second overtime policy that was intended to apply to him and his co-workers. Rather, he understood that he was to be paid time and one-half for hours worked over 40 in a work week, pursuant to Policy 303.

In an attempt to calculate the pay owed to Mr. Castaneda under the alleged second policy, the Defendants provided Exhibits 10-14 to show how the second policy calculated wage rates and overtime for the years 2007-2009. When asked where Exhibits 10-14 originated, M. Byrd testified that he created them from his memory as representative of what he had done in the past. He stated that he took wage information as to Mr. Castaneda from the Company's payroll records and created the exhibits. Notably, the amount on the line on each exhibit (Exhibits 10-14), styled, "Total Payment Per Hour Worked," is inconsistent with the contemporaneous actual payroll records for Castaneda which comprise Exhibit 4. Defendants did not produce any actual contemporaneous evidence of a calculation under the second policy. Only Mr. Castaneda's payroll records were produced and admitted in evidence, and provide no basis to conclude that application of any second policy existed or that Mr. Castaneda's hourly rate was anything other than the rate specified on the payroll records.

The Court does not credit the testimony that a second policy existed, that Mr. Castaneda was to be paid under any policy other than that stated in the employee handbook, or that his hourly rate was anything other than the one listed on the relevant payroll records.

## Conclusions of Law

Plaintiff Castaneda's action was brought under the FLSA and the IMWL, Ind. Code 22-2-2-4 et. seq., to recover unpaid overtime compensation and liquidated damages. The IMWL states that an "employer" under that statute "shall not include any employer who is subject to the

minimum wage provisions of the [FLSA]." Therefore, the IMWL does not apply when the FLSA applies. *See Abner v. Dept. of Health*, 777 N.E.2d 778, 785 (Ind. 2003) (reiterating that "the [FLSA] is the exclusive remedy for enforcing rights created under that federal statute."). It was conclusively established at trial that the Company is covered by the FLSA, as it is an enterprise engaged in commerce. The two disputed issues were the calculation of Mr. Castaneda's hourly rate and whether Terry D. Stout can be individually liable for the Company's FLSA violations.

Under the FLSA, an "employer" is defined broadly as "any person acting directly or indirectly in the interest of the employer in relation to an employee." 29 U.S.C. § 203. The FLSA provides for liability not only against the corporate employer, but also corporate officers with day-to-day control and authority to act on the corporation's behalf. "The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, and is jointly and severally liable under the FLSA for unpaid wages." *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir. 1991).

Terry D. Stout's operation of the Company falls squarely within the liability parameters set by *Dole*. In 2007, Mr. Stout was the sole shareholder of the Company for at least a portion of the year, and its Chief Operating Officer. Mr. Castaneda testified that Mr. Stout ran the business, assigned work, and told the employees how to carry out their duties. Further, Mr. Castaneda testified that Stout's operational control continued in the years 2008, 2009, and 2010. Mr. Castaneda testified that in each of these years, he continued to receive his assignments from Mr. Stout, and that Mr. Stout was present in the Company's Indianapolis office. The Court has credited Mr. Castaneda's testimony.

Defendants TD Stout Preservation, Inc. and Terry D. Stout were subject to the FLSA's overtime payment rules, and violated those rules by failing to pay Plaintiff Castaneda at a premium rate for overtime hours worked. Both Defendants also violated the FLSA's record-keeping provisions, 29 U.S.C. § 211(c), which require employers to maintain accurate and updated records of hours worked, as Defendants have no records for the hours worked by Mr. Castaneda in 2010.

The conduct of the Defendants was neither consistent with the FLSA, nor consistent with their own employee handbook policy requiring the payment of overtime at the rate of 1½ the employee's regularly rate for hours worked in excess of 40 hours in a work week. These inconsistencies establish that Defendants' failures to comply with the FLSA were not in good faith. An employer who violates the overtime compensation provisions of the FLSA is liable to the employee in the amount of the unpaid compensation as well as an additional equal amount as liquidated damages. 29 U.S.C. § 216(b). Liquidated damages are "mandatory for FLSA violations unless the district court finds that the defendant-employer was acting in good faith and reasonably believed that its conduct was consistent with the law." *Shea v. Galaxie Lumber & Constr. Co., Ltd.*, 152 F.3d 729, 733 (7th Cir. 1998). A "substantial burden" is on the employer to overcome the strong presumption under the FLSA in favor of doubling the damage award. *Id.; Bankston v. State of Ill.*, 60 F.3d 1249, 1254 (7th Cir. 1995).

The Defendants are jointly and severally liable to Plaintiff Castaneda for unpaid overtime in the amount of $21,849.14, as well as an equal amount of $21,849.14 in liquidated damages. Plaintiff Castaneda shall be permitted to recover his reasonable costs and attorney's fees in this action. 29 U.S.C. § 216(b). The parties shall confer to determine whether they can reach an

agreement as to the amount of fees recoverable. If no agreement can be reached, Plaintiff shall file a verified petition for costs and attorney's fees within 14 days of the entry of judgment. [LR 54.1.]

02/10/2012

_Jane Magnus-Stinson_

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only**

Bruce D. Brattain
BRATTAIN & MINNIX
bbrattain@brattainminnix.com

Eric Norman Engebretson
ene@whzlaw.com

Mario  Garcia
BRATTAIN & MINNIX
mgarcia@brattainminnix.com

Michael Joseph Hebenstreit
WHITHAM HEBENSTREIT & ZUBEK
mjh@whzlaw.com

Stephen E. Schrumpf
BROWN DEPREZ & JOHNSON, P.A.
ses@shelbylaw.com